Appellant Deborah Puschel, a former air traffic controller, filed two claims of discrimination and reprisal against the FAA, and a claim against OWCP, the Office of Worker Compensation Programs, when it violated her rights under the First Amendment when they reduced her disability benefits because she ran for Congress, which OWCP took as a sign she was not as disabled as she claimed. Are you making a claim against the Worker Compensation Bureau? I thought you were not. In count three, Judge Silberman, we are specifically claiming that the OWCP violated Ms. Puschel's First Amendment rights. Constitutional rights. Yes, the constitutional claim. And that's the only claim, the only count, that we're targeting the OWCP. Okay. And I want to add, because it's not necessarily clear, in 1999, OWCP awarded Ms. Puschel full disability benefits stemming from her employment with the FAA up until that time. Given the time constraints, we wish to focus our attention on the district court's dismissal of the constitutional claim, count three, for failure to state a claim. There are two issues that are not in issue in this case. One, the district court correctly held that it had jurisdiction over the OWCP claim under LePray v. Department of Labor decision of this court. And two, the court correctly did not question at this stage of the litigation Ms. Puschel's claim that her OWCP benefits were reduced because she ran for Congress. Instead, the court dismissed the claim, count three, citing the Supreme Court's letter carrier's decision, which upheld the Hatch Act, and a decision of this court branch versus the Federal Communications Commission, which upheld the equal time and fairness doctrine requirements in the 1982 amendments to the Communications Act of 1934. Both of those decisions affirmed Congress's ability to protect the political process consistently with the First Amendment. What I don't understand is why is it that running for Congress exhibits a great deal of activity, physical activity, as everybody knows, and why isn't it legitimate for OWCP to conclude that that kind of activity is inconsistent with disability ruling? Well, in fact, Your Honor, as OWCP itself held, running for office is not the same as holding a job. The OWCP benefits are predicated on Ms. Puschel's inability to work. In that she could not do what? In that she could not perform the duties of an air traffic controller. Namely? I'm sorry? Namely? Well, she suffered from various medical conditions that were associated... Be specific, though. I'm sorry? Be specific. Your Honor, the district court's record was sealed with respect to this precisely. Well, what I'm getting at is, as Judge Silberman has pointed out, to run for Congress takes a lot of time, energy, etc. All right? So if that's what she was unable to do when she was fully disabled, then it seems to me Judge Silberman makes a strong point. On the other hand, if her disability was because of some permanent condition or something that had nothing to do or could not in any way be analogized to anything remotely similar to running for Congress, then maybe it would be irrelevant. But that's not the way the case comes to us. Well, when the OWCP issued its decision granting Ms. Prischel's benefits for injuries sustained in the course of her employment, it was not ruling on her ability to run for Congress. I understand, but on the other hand, it was ruling on her ability to do the air traffic controller's job, right? Yes, but the air traffic controller's job demanded certain skills and... Like what? I'm sorry? Like what? The ability to pay attention, the ability to not be subject to sexual harassment as she was, which was a part of OWCP's decision. As we pointed out in our briefs, Ms. Prischel prevailed in a Fourth Circuit decision that found that she had been the victim of sexual harassment. And the OWCP took that into account in terms of the conditions that she was experiencing when it found that she was totally disabled. I want to suggest that the disability that we're talking about is not the same as somebody who's a paraplegic, who is totally disabled. Senator Duckworth is disabled as far as the military and the VA are concerned. That does not mean that she could not run for office, and it doesn't mean that she can serve as a senator. It means that for the specific injuries that she experienced, the VA is considering her to be disabled. As to that job. To do the job of the military. Of the air traffic controller. Yes, Your Honor, but the... She could follow things on a computer. She could track flights. She could schedule things. You know, running for Congress, she has to schedule things. She can track polls as to how well she's doing. I mean, there is some similarity, facially. Your Honor, Ms. Prischel was evaluated consistently by her doctors and OWCP doctors after her disability. So your position is that since she was once declared to be totally disabled as an air traffic controller, she was entitled to keep that status no matter what she did. No. The rest of her life? No, that's not our position. What is your position? Our position is, as recently as January 2013, and this is in the record. It's document 16-2, which was a declaration filed by the government. And it pages... We don't have the court's actual filing document, but the PDF pages were 27 to 41. As recently as January 2013, Ms. Prischel was examined by a doctor who declared that she was still incapable of full-time work. OWCP went back to her and said, yes, but she ran for Congress. You didn't take into account that she ran for Congress. And that doctor said, oh, well, if she ran for Congress, then maybe she isn't completely disabled. What I am suggesting here is, under the First Amendment, it is inappropriate to consider the fact that a person is running for Congress. And, Judge Rogers, the running in Ms. Prischel's case was posting a website, which takes no effort, showing up at a forum every now and again. That is all that OWCP could point to. And we assert that that is an improper factor in considering whether the compensation she was earning because of her injuries while a federal employee can be reduced. I mean, that sounds an awful lot like us second-guessing the merits of the disability decision. No, and in fact, we're not asking you to second-guess the merits of the disability decision. The only thing we can ask for on a constitutional claim such as this is that the district court remand the decision to OWCP to rule out her running for Congress and to decide, based on the remaining factors, whether her benefits should or should not be reduced. But that, indeed, just as my colleague suggests, is asking us to review the OWCP opinion. No. Yes, it is. You're saying there's a factor they considered which is inappropriate. They're remanding it back to them to excise that factor. You would first have to decide. And, you know, in the branch decision, which the district court relied upon, this court said the right to seek public office is undeniable. That's what this court said. What we are suggesting is, just as in the cases that held that somebody running for Congress could not be compelled to pay a filing fee if they were indigent, that you could not put a burden on running for Congress in that manner, that OWCP should... The student loan was incurred in a different context. Right, before the individual ran for Congress. And if the individual running for Congress said, if I have to pay the student loan, I won't be able to finance the running for Congress. Yes, but, Judge, that's... The student loan is an obligation that the person owes. We're talking about money that the government normally pays to an employee. Or in the case of a filing fee, there's no money that's owed. This is a burden that is placed on the individual as the price of running for office. And the Supreme Court says you can't do that. You can't do that. And what we're suggesting... No, the charge is for activity. It wouldn't matter if it was running for office or running for a bus. But the OWCP did not base its decision on any physical activities that Ms. Pichelle might have... What everybody knows, running for Congress takes an enormous amount of energy and time. I suggest, Judge Subleman, with all due respect, posting a website does not take an enormous amount of activity. What about your acknowledgment that in 2013, in this document that's not part of the record before this court, the doctor acknowledged that maybe running for Congress would make a difference as to whether she remained eligible for 100% disability? What we are suggesting is basing the decision on whether Ms. Pichelle is disabled on the fact that she ran for Congress is a violation of the First Amendment. It imposes a burden on her ability to run for office. It's not that she's penalized for running for Congress. It's that as a result of that, she has engaged in certain activity where the government is suggesting she's no longer fully disabled. And she probably could do some part of the air controller traffic job. Or other related jobs. Yes, but that wasn't the basis for the OWCP decision. So if the facts were that in the course of her campaign, she challenged her opponent to a series of Lincoln-Douglas style debates and they stood and debated for hours on end on multiple occasions, OWCP couldn't take that into consideration. Judge Wilkins, without going too far into this, the injuries for which Ms. Pichelle was compensated were emotional and similar kinds of injuries which are not implicated in running for office. She's sitting in the courtroom. I don't want to get into this. This is protected information. But the fact of the matter is that OWCP's reliance solely on the fact that she was a candidate, without considering any of the issues that you're discussing. So you're saying that if it were relevant to the disability determination, they could consider her running for office. If the activities that she engaged in in running for office were relevant, then it wouldn't violate the First Amendment under those circumstances. If there were medical records, because OWCP relies on medical records, if there were medical records that established that she had recovered sufficiently, the emotional issues had recovered sufficiently, as demonstrated by her ability to do X, Y, and Z, then, yes, that might be something that OWCP legally could find. But by basing its decision on the mere fact that she had been a candidate is a violation of the First Amendment. No, but my question is, they find out that she was a candidate, and a doctor says, okay, as a candidate, what were you doing? And the doctor finds out what activities she was taking place in as a candidate, and then the doctor bases a recommendation on that and says, well, those activities are relevant to the disability determination. Are you saying that's permissible or not permissible? What I would say, judges, and Ms. Peschel was not given the opportunity to discuss that with a doctor, but what I would say is if the case is remanded for consideration of Ms. Peschel's recovery or not, without consideration of the mere fact that she was a candidate, had posted a website, if OWCP says in the face of that that we believe that the activities that she engaged in indicate that she has recovered, that decision by itself would be unreviewable. That decision is specifically carved out of judicial review by 5 U.S.C. 8128B, and that decision would not be reviewable. What we are here arguing, just as this Court has considered on any number of occasions, is when a constitutional challenge is posed, it's the duty of the Court to decide whether the constitutional issue identified by the claim was, in fact, a factor in the decision, and that's what we're suggesting. I'd rather you didn't, but nevertheless. Thank you. You didn't have a chance to raise your other two issues. I hope you have a chance on rebuttal. I don't have any time for rebuttal. We are prepared to, unless the Court has questions, we're prepared to rest on the briefs with the first two counts. Good morning. Good morning, Your Honors. May it please the Court, Christopher Herr, Counsel for Appellees. I'll start where we left off. For Fischel's First Amendment claim, under this Court's precedent in Branch v. FCC, Fischel's right to seek political office is not implicated here. Fischel offers no FICA challenge or no statutory mandate challenge to OWCP's implementation of FICA, nor does she point to a systemic constitutional issue with her disability claim. That's not really her issue as she's framed it. So why don't you deal with her issue as she's framed it? I believe, Your Honor, that her argument regarding OWCP's consistency in determining wages for activities involving political office is really a challenge to the assessment of the medical evidence in support of her disability claim. And the question is, how would we ever know? Well, I mean, the discussion that we just had a moment ago dealt with the medical evidence that was submitted in this claim. Well, not really, because it's all under seal. Correct, Your Honor. So it's not a part of the record before this Court. And while we would disagree with the characterization of evidence, what we are arguing is simply that there's no either OWCP rule or requirement that they set aside activities that have to do, incidentally, with running a congressional campaign. Suppose all that's in the record before us is that her disability was reduced because she ran for political office, period. And that's all we know. Well, I'm not sure how that case would necessarily play out. I know it's different from the case we have here. Why? Because here we know that OWCP began the process by which it evaluates medical evidence. I think if you look at this claim from the FAA's perspective, where that might be all that the agency knew with respect to a campaign website or that type of information, and then submitted it to OWCP, the process by which OWCP then reopens and looks at the record of the medical evidence, I think it would be very easy to allege that the only thing that OWCP looked into was the fact of whether or not someone ran for political office. However, the process is much more complex than that. How do we know that? Well, you do have a window into it here, Your Honor, from our sealed filing. However, the allegations in the complaint make clear that the OWCP did go through its regular process, as one would expect it to do, of evaluating the medical evidence before it and permitting Fuchsia to submit her own medical evidence, and indeed she did. So how do we avoid the danger that Judge Wilkins' question focused on? I believe, if I recall Judge Wilkins' question, it had to do with— Second guessing. Right. I think to avoid second guessing, I think that's exactly what Congress intended when it precluded judicial review of this evidentiary determination. Do you think Congress meant an agency could rely on impermissible factors? No. I think there are constitutional protections available to a plaintiff where there are the types of challenges that this Court wrestled with and Lapre. So it's one thing if the sealed record shows all kinds of things, like she was very active, she had to get up at dawn to go to these candidates' forums, things like that. But is that the kind of record you're telling me there is? Well, Your Honor, yeah. I think what I can tell you about the record is that it wasn't simply just based on— as a matter of law, because you ran for political office— what was it based on other than the fact she ran for office? Did it address some of the things Judge Wilkins was talking about? Yes, Your Honor, it did. The Department of Labor referred Ms. Fischel after review of medical evidence to a counselor who then reviewed what types of physician that Fischel would be able to— What kind of counselor? A medical counselor? This is a vocational rehabilitation officer, and I forget the exact title. I'm sorry, Your Honor. No. But it's an individual, a professional who's responsible for determining what type of work Fischel would be able to perform should she return to the workforce. And that counselor filed a report? I'm not exactly sure off the top of my head, Your Honor, whether or not she has a report. Well, I mean, what was the decision based on? The decision was based on her review of the— Whose review? Of the counselor's review of the evidence before the counselor. And this process just has to do with how the Department of Labor in general determines what type of work an individual might be able to perform when they return to performing some work. And I just want to clarify, this is not necessarily that Fischel would have been able to perform the job duties of an air traffic controller. It's any job. It's any job. That's right, Your Honor. The disability determination is not based on her prior job. It's whether she could perform any job. And part of the reason the Fourth Circuit reversed was that she had suffered emotional damage because of sexual harassment. That's right, Your Honor. There are, you know, at issue here both sort of emotional injuries and physical injuries, both of which were a part of the OWCP record. And both were sort of subject to different review as the record demonstrates or at least the complaint demonstrates. But, you know, even if you were to accept the— Well, you would agree if OWCP said, we don't think anybody who's on disability should run for Congress because that is, in our view, an undesirable occupation for anybody on disability. You would recognize that would present constitutional problems. Indeed, I would, Your Honor. I think that gets to the very— So then you get back to Judge Rogers' question, what determination is made that running for Congress is inconsistent with full-time disability? What determination by the Department of Labor? Yes. I think it's really just whether or not an individual has demonstrated the ability to perform some work. In other words, running for Congress would demonstrate you would be able to perform some work, whether it's not air traffic controller. Some work. That's correct. You would need to be established that you're able to perform some work. Because she had been granted total disability, right? At one point, yes, Your Honor. And then that was reduced to partial disability. And so those benefits were subject to various reductions in this case. And I just want to address the— OWCP cases cited in appellant's brief do get to this issue of, well, it's not the same in terms of a wage determination or necessarily how one determines what type of work you can do when you review a kind of a regular 9-to-5 job, so to speak, and running for Congress. We might acknowledge that they are somewhat dissimilar. However, you can't ignore that, even though they may not be the same as an individual seeking work on the open market. To the extent that those activities, as here, demonstrated an individual's ability to work, they would be relevant and appropriate for the Department of Labor to review in its benefits determination. And we think that kind of dressing up a constitutional challenge to sort of figure out what, you know, balancing the agency conducted in that determination is contrary to the statute that we're dealing with here and also inconsistent with. Is there anything in the record that indicates that the Department of Labor was hostile to her activity because it was political? Well, there's nothing in the record, Your Honor. Of course, we're at a motion to dismiss posture. So there's sort of the assumption that there may have been— was based on a political judgment. I believe it's limited to a conclusory allegation that the Department of Labor— That's what I thought. —reduced the benefits because of her running for office. And while, you know, we believe that the Tritts Declaration, which we acknowledge was filed under seal and not a part of this record necessarily, that demonstrates that that indeed wasn't the case, but the process here is one that involved a back-and-forth— In other words, your position is there is nothing in the complaint that suggests that the fact that the Department of Labor took that into account was based on a political judgment. That's correct, Your Honor. Your Honor, as we've noted in our brief, the Department of Labor's decision in this case and the allegations pertaining to that decision are devoid of any allegation that the Department had any animus towards Pichelle's political activity or even running for Congress in general. As I noted before, we acknowledge that OWCB has wrestled with these concepts in the past, but we think it's beside the point. There's a demonstrated ability to work. That is the sole purview at that juncture of the Department of Labor's consideration, and that's the way this played out here. There's nothing in the complaint that suggests that the Department of Labor otherwise circumscribed the statute, circumscribed its own regulations in evaluating the evidence. We would just rather have them not consider the evidence at all because it pertains to an activity that incidentally does implicate a constitutional right. So you acknowledge that this is a constitutional right? We acknowledge that running for political office, as the circuit has said, is a constitutional right. And you acknowledge that if the complaint alleges that her disability benefits were reduced solely because she ran for political office, would state a plausible claim of a violation of the First Amendment? Well, at that point, Your Honor, I think we're in the territory that we would rely on branch, or the branch decision, because where you have an incidental benefits reduction or some injury sort of unrelated to your actually being able to run for Congress, your political, you know, your right to seek political office is simply not implicated. So we think we sort of fail at the first step. We think the complaint is inadequate. We think that the well-plaid allegations of the complaint do not make out a constitutional claim that this court would, the complaint has more or less failed to state a claim within this court's jurisdiction to review constitutional claims. It's not enough, in other words, to simply point to a right to run for Congress and then state in a conclusory fashion that that's the only reason. So if she had assumed leadership of her temple as a rabbi or her church as a minister and OWCP had said, well, doing that shows that you're not disabled and so we're reducing your benefits and we had the exact same complaint, no constitutional problem? Well, I think in this case it would have more to do with did OWCP evaluate medical evidence or was it, you know, rather as a matter of law or just as a matter of their policy, such activities would bar the claimant from receiving any benefits. So if there was a policy bar or some other structural preclusion of receiving benefits because of an issue that would otherwise be protected by the Constitution, I think that we might have a constitutional claim and, of course, we don't have that issue here nor in the hypothetical I think Your Honor suggests. But you say that if it's the same facts with respect to running for office under Branch, the claim fails. Yes, I think Branch, you know, while of course it arose in a different context, the issue remains the same that nobody ever thought you had a right to run for Congress while also receiving full disability benefits. There are going to be burdens, you know, along the way with respect to financial obligations or other things that really don't implicate or otherwise limit your ability to seek political office. Like I said, if the government were to preclude someone from receiving any benefits merely because they participated in some protected constitutional activity. Without regard to the demands on the individuals physically and mentally. Exactly right, Your Honor. What makes this case different is that there's no dispute that the Department of Labor did open an inquiry and evaluate medical evidence. While you might, the appellant might disagree with how that evaluation took place or characterize it in a different way, it did happen and there's no indication in the sealed record or otherwise in the complaint that the Department of Labor categorically barred Tushel from receiving disability benefits because of her seeking political office with respect to her congressional campaign. I see that I'm out of time. All right, thank you. All right, counsel, would you like a couple of minutes? Thank you. Mr. Hare quoted the district court's opinion when he said nobody would argue. Oh, sorry. That nobody would argue that a person has a right to run for Congress while receiving full disability benefits. In fact, that would be a job for the Congress. It would be that it was the Congress that said in letter carriers that the federal government had a right to ensure that its employees, nonpolitical employees, were not motivated by. So your position is no matter how much activity is involved in her running for Congress, that subject is off the table. It's constitutionally protected. Your position is that the Department of Labor was not able to consider that factor at all. What I'm arguing. Is that correct or not? Please answer yes or no. Yes. Yes. In fact, O.W.C.P. Even if she had to run 100 miles, 10 miles every day, that would be irrelevant because it was running for office. You know, Your Honor, it's an interesting question because Congress has addressed to a certain extent. The answer is yes. The answer is that the fact that she was a candidate, the sole fact that she set up a website. No, no. But your point, it's with respect to your complaint. I understand your complaint to say this is a factor that cannot be considered at all. Yes. No matter how much effort it takes her. No, I'm not saying that. I'm saying that the fact that she had a website, which is the only factor that was. Wait a minute, wait a minute. I understood your complaint to say this factor could not be considered at all. Isn't that what your complaint says? Yes. Okay. That's the case before us then. If I could just finish one more point, Judge Rogers. Congress has spoken on the question of whether somebody could serve in public office while receiving disability benefits. It's 5 U.S.C. 81-16-B that says that while an OWCP recipient is receiving benefits, that person cannot accept any other salary remuneration from the United States except for services actually performed. In other words, if Ms. Bichelle had actually won her race for Congress, OWCP could not diminish her benefits. The notion that it could diminish her benefits while running simply makes no sense. And in any event, it's for Congress to decide, as Congress did in the letter carriers case with respect to the Hatch Act, and in the branch case with respect to the Communications Act. Congress carefully weighed all of these factors, the pluses and minuses of the imposition on the individual, and said that there were federal issues that outweighed them. They did not do that. The statute is properly read that if someone is elected to Congress and serves full time, as a matter of law, disability benefits cannot be reduced? Yes. That's the way you read that statute? I think the language is very clear. I'm not sure that's true. All right, thank you very much. Thank you, Judge. I take the case under advisement.
judges: Rogers, Wilkins, Silberman